In re KEITH ESTATE

LOWELL v DEPARTMENT OF TREASURY

Docket No. 84587. Submitted March 12, 1986, at Lansing. Decided June 16, 1986.

Lenna M. Keith died testate and her will was probated in the Ingham Probate Court. The decedent's personal representative, Michigan National Bank, subsequently filed a petition for the judicial construction of the residuary clause of decedent's will. That clause devised the estate's residue to "United Church Manors, also known as Burcham Hills Retirement Center" (Burcham Hills). However, United Church Manors, a nonprofit corporation and a wholly-owned subsidiary of the Michigan Conference of the United Church of Christ, a Michigan ecclesiastical corporation, was dissolved in bankruptcy and Burcham Hills was sold to the American Retirement Corporation, a for-profit corporation. The personal representative sought to determine to whom it should distribute the estate's residue, given that the named devisee was defunct. Three parties responded to the petition: (1) Burcham Hills, through its owner, American Retirement Corporation; (2) the Charitable Trust Division of the Attorney General's office; and (3) Helen Lowell, a stranger to the will who claimed to be Keith's sole heir-at-law. The parties settled, stipulating that decedent had a general charitable intent to benefit Burcham Hills' residents. They agreed to prevent the charitable devise from lapsing by applying the cy pres doctrine to establish the Lenna M. Keith Charitable Trust. Pursuant to stipulation, the estate's residue would be distributed to the trustee of the charitable trust, who in turn would

REFERENCES

Am Jur 2d, Inheritance, Estate, and Gift Taxes §§ 27*et seq.*, 347 *et seq.*

Am Jur 2d, Statutes §§ 142 *et seq.*

Am Jur 2d, Wills §§ 822 *et seq.*, 1127 *et seq.*

Construction and application of statutes apportioning or prorating estate taxes. 71 ALR3d 247.

Remedies and practice under estate tax apportionment statutes. 71 ALR3d 371.

Construction and effect of will provisions expressly relating to the burden of estate or inheritance taxes. 69 ALR3d 122.

pay Lowell fifty percent of the full market value of the trust corpus. The settlement was approved by an order of the probate court, Donald S. Owens, J. The court's final inheritance tax order assessed a tax against the transfer of part of the residue to Lowell, while exempting the balance of the transfer to the charitable trust. Lowell petitioned for a redetermination of the inheritance tax assessment against her. The Department of Treasury opposed her petition. The court granted a redetermination and amended the final inheritance tax order, cancelling the assessment against Lowell, after ruling that there was no statutory authority to tax the distribution to Lowell. The Department of Treasury appealed. *Held:*

1. The action initiated by the personal representative was an action to construe the decedent's will. It was not an action to contest the will as the Department of Treasury argued.

2. The transfer to Lowell which resulted from the settlement of the personal representative's petition was not a transfer in settlement of a will contest. Therefore, the court did not err in ruling that MCL 700.191(2), the statute which treats transfers in settlement of a will contest as a transfer to the recipient and taxable for purposes of inheritance taxes, did not apply to the transfer of part of the estate's residue to Lowell.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION.

Interpretation and construction of the terms of a statute is unnecessary when the statute is unambiguous on its face.

2. WILLS — WILL CONTESTS.

The phrase "will contest" refers to the action of a litigant who, having received notice of a probate court or equitable proceeding, attempts to nullify or defeat what the testator had declared to be his will; grounds for will contests include challenges to proper execution, claims of undue influence, and claims that the will was forged or was executed by an incompetent testator.

3. WILLS — ACTIONS FOR CONSTRUCTION OF WILLS — STATUTES.

A litigant, in an action for construction of a will, seeks not to invalidate the will; rather, such litigant seeks to discern the testator's intent through rules of construction provided by statute and to give effect to that intent (MCL 700.130 *et seq.;* MSA 27.5130 *et seq.*).

4. TAXATION — INHERITANCE TAX — WILLS — ACTIONS FOR CONSTRUCTION OF WILLS — STATUTES.

The statute which, for inheritance tax purposes, treats the trans-

fer of an asset to a person in settlement of a will contest as a transfer to the person receiving the asset and not to the person named in the will in cases where the settlement agreement was in writing and made a part of the record of the estate before distribution does not apply to a person who is not named in a will but who acquires assets in a settlement of an action for construction of the will; such person incurs no liability for inheritance taxes when receiving assets as a result of the settlement (MCL 700.191[2]; MSA 27.5191[2]).

*Bos & Hanes, P.C.* (by *Todd D. Chamberlain* and *John E. Bos*), for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Ross H. Bishop,* Assistant Attorneys General, for the Michigan Department of Treasury.

Before: MACKENZIE, P.J., and ALLEN and G. W. CROCKETT, III,* JJ.

ALLEN, J. In this appeal as of right brought by the Michigan Department of Treasury, we are asked to decide whether an inheritance tax may be imposed on property acquired in exchange for a waiver of all claims against an estate, where the settlement arises out of an action to construe a will as opposed to a "will contest." We answer this question in the negative and affirm.

On February 25, 1976, decedent Lenna M. Keith executed a will in which she devised the residuary of her estate to "United Church Manors, also known as Burcham Hills Retirement Center." United Church Manors was a nonprofit corporation and a wholly-owned subsidiary of the Michigan Conference of the United Church of Christ, a Michigan ecclesiastical corporation. Following United Church Manors' dissolution in bankruptcy

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

on or about September 8, 1979, Burcham Hills was ultimately sold to the American Retirement Corporation, a for-profit corporation and the current owner, operator, and licensee of the facility.

Lenna M. Keith's will was admitted to probate on December 7, 1982, following her death on October 30, 1982. On February 22, 1983, Michigan National Bank, as personal representative of the estate, filed a petition for judicial construction of the will's residuary clause. The bank sought to determine to whom it should distribute the residuary estate, given that the named devisee was now defunct as a result of bankruptcy. Three parties responded to this petition: (1) Burcham Hills, through its present owner, American Retirement Corporation; (2) the Charitable Trust Division of the Michigan Attorney General's office; and (3) Helen Lowell, a stranger to the will who claimed to be Keith's sole heir-at-law.

Burcham Hills argued that the cy pres doctrine should be applied to save the residuary devise, maintaining that a charitable trust should be established since the residuary clause evinced a general charitable intent.[1] Alternatively, it argued that the purpose of the devise was to benefit Burcham Hills' residents, and that naming an alternative trustee would constitute only a minor deviation in the administration of the will. The Attorney General advanced these same arguments. However, Lowell maintained that the cy pres doctrine was inapplicable to Keith's will, and that substituting another trustee would not be a minor deviation. Lowell's arguments were premised on the assertion that the residuary devise was intended to benefit a specific nonprofit corporation

---

[1] For elucidation on the cy pres doctrine, see *Kostarides v Central Trust Co,* 370 Mich 690; 122 NW2d 729 (1963), and *In re Rood Estate,* 41 Mich App 405; 200 NW2d 728 (1972), lv den 388 Mich 766 (1972).

with a specific religious affiliation. Lowell contended that the charitable devise lapsed, and that, as a result, she was entitled to the residuary estate pursuant to the laws of intestate succession.

The parties settled. They stipulated that Keith had a general charitable intent to benefit Burcham Hills' residents. Consistent with this intent, the parties agreed that the cy pres doctrine would be applied to the residuary clause so as to prevent the charitable devise from lapsing. The Lenna M. Keith Charitable Trust would be established to effectuate this intent and, pursuant to stipulation, the residuary of the principal corpus of the trust would be distributed to its trustee. Further, the parties agreed that the trustee of the subject trust would pay Lowell fifty percent of the full market value of the assets in the trustee's possession. This settlement was effectuated on July 3, 1984, by the entry of two orders encompassing the parties' agreement.

On December 26, 1984, the probate court entered an order allowing the final account by the personal representative. The order also created the Lenna M. Keith Charitable Trust, and provided for the transfer of all remaining assets of the estate to the trustee. Thirty days after the final tax determination, the trustee was to pay Lowell her portion of the settlement, less $75,000 previously received on January 6, 1984.

On January 23, 1985, the probate court entered a final inheritance tax order, assessing the taxable estate at a clear market value of $196,173.09. Lowell and the Lenna M. Keith Charitable Trust were each determined to have net distributions of $134,861.55. The amount transferred to the charitable trust was tax exempt. However, the inheritance tax assessed against the transfer to Lowell was $17,881.

On February 12, 1985, Lowell petitioned for a redetermination of the inheritance tax assessment. She alleged that her settlement distribution was a direct expense of the charitable trust and was therefore exempt from the inheritance tax. Further, she acknowledged that the settlement had been structured to avoid the inheritance tax, and that this was a primary inducement to settle. The Department of Treasury opposed the subject motion, but the probate court granted a redetermination and amended the final inheritance tax order. The court cancelled the assessment against the transfer to Lowell, finding that there was no statutory authority to tax her distribution. It is from this action of the probate court that the Department of Treasury takes the current appeal.

We find that the resolution of the question presented depends on which of two rules applies to the Lowell transfer, the rule established in *In re Cress Estate,* 335 Mich 551; 56 NW2d 380 (1953), or the rule codified by MCL 700.191(2); MSA 27.5191(2). In *Cress,* the Supreme Court held that a compromise agreement, entered into between parties to a will contest or threatened will contest, would not alter the inheritance tax consequences that resulted from the distribution provided for in a decedent's last will and testament. The Court reasoned that the inheritance tax attached at the instant of transfer, which was the time of death. Since the tax attached at the time of death or transfer, the Court concluded that the tax would have to be computed in accord with the distribution provided for in the will, regardless of the actual distribution made pursuant to settlement.

Lowell was not named in Keith's will. Consequently, she received no distribution by its terms. Thus, if the *Cress* rule applies to her distribution, no inheritance tax may be imposed on the transfer

of property to Lowell from the charitable trust, regardless of the actual distribution provided for in the parties' settlement agreement.

The *Cress* rule was altered to a large extent by MCL 700.191(2), which provides:

> The transfer of an asset to a person *in settlement of a will contest,* whether the settlement is effected under this article or any other provision of law, shall be treated for inheritance tax purposes as a transfer to the person receiving the asset and not as a transfer to the person named in the will in all cases where the settlement agreement was in writing and made a part of the record of the estate before distribution of the asset. [Emphasis added.][2]

The probate court found that § 191(2) had no application to the facts of the instant case, since the action initiated by the personal representative of Keith's estate was an action to construe her will after it had been admitted to probate. At no time did any party "contest" or threaten to "contest" Keith's will. Rather, the transfer to Lowell resulted from settlement of an action to construe the will, as opposed to being "in settlement of a will contest." Accordingly, the probate judge concluded that the *Cress* rule governed this case and that no inheritance tax could be imposed on the Lowell transfer.

The Treasury Department points out that the Legislature enacted the Dodge act, MCL 702.45 *et seq.;* MSA 27.3178(115) *et seq.,* repealed by 1978 PA 642, § 993, which, in pertinent part, provided

---

[2] We note that Lowell received $75,000 of her distribution on January 6, 1984, before the settlement agreement was put into writing or made a part of the record. Thus, regardless of the interpretation given the phrase "in settlement of a will contest," this payment cannot be treated as a transfer to Lowell for inheritance tax purposes.

that settlements relating to *any* will dispute would be encouraged and enforced. In *Cress,* the Supreme Court expressly stated that the Dodge act did not modify or alter the inheritance tax laws. Hence, the Dodge act had no bearing on the fact that inheritance taxes attached at the time of death, regardless of a subsequent settlement. Following *Cress,* the Legislature repealed the Dodge act, but retained its substance by simultaneously enacting subsection (1) of MCL 700.191, which provides in pertinent part:

> Subject to the rights of creditors and taxing authorities, *competent interested parties may agree among themselves to alter the interest, shares, or amounts to which they are entitled under the will of the decedent or under the laws of intestacy,* in any way that they provide in a written agreement executed by all who are affected by its provisions. [Emphasis added.]

This provision appears to encompass both "will contests" and the action herein to construe Keith's will. Moreover, it is immediately followed by § 191(2), quoted previously, which alters the *Cress* rule for transfers made "in settlement of a will contest."

The Department of Treasury argues that it would be illogical to hold that § 191(2) did not apply to *all* will disputes described in § 191(1). Apparently, it sees no reason for according various settlements distinct tax treatment based only on the nature of the dispute. Therefore, it urges this Court to apply the rule of statutory construction which dictates that legislative intent be determined by considering a statute as a whole, giving effect to each of its provisions. See *Oxford Twp v Dep't of Social Services,* 120 Mich App 103, 108; 326 NW2d 409 (1982). The Treasury Department

maintains that when this rule of construction is applied, it follows that the Legislature intended that "will contests" be construed to mean all will disputes.[3]

To accept the Treasury Department's argument would be to ignore a threshold rule of statutory construction. For, we are called upon to discern legislative intent only when a statute is ambiguous. In construing a statute which is unambiguous on its face, interpretation and construction of its terms is unnecessary. *Sneath v Popiolek,* 135 Mich App 17; 352 NW2d 331 (1984).

We believe that the language "in settlement of a will contest" is clear and unambiguous. The phrase "will contest" has evolved as a term of art. As employed by lawyers, the expression "contest or attempt to contest" has usually referred to the action of an actual litigant who, having received notice of a probate court or equitable proceeding, attempts to nullify or defeat what the testator had declared to be his will. *Saier v Saier,* 366 Mich 515; 115 NW2d 279 (1962). Grounds for will contests have historically included challenges to proper execution, claims of undue influence, and claims that the will was forged or was executed by an incompetent testator. Moreover, actions involving will contests have typically been asserted before a will is admitted to probate. See MCL 702.24;

[3] The department maintains that § 191(2) was broadly construed in *In re Wentworth Estate,* 127 Mich App 308, 311; 338 NW2d 396 (1983), as applying to "any agreement designed to resolve a potential or actual will dispute." However, when this language is read in the context of the entire opinion, it is obvious that the Court was referring to the narrow dispute involved in that case. The *Wentworth* Court was required to determine whether "in settlement of a will contest" would include an agreement to avoid a will contest. In holding that it did, the Court accorded "will contest" the broadest construction that it had yet received from this Court. However, we do not view *Wentworth* as persuasive authority for the proposition that "will contest" should be deemed to include actions to construe a will.

MSA 27.3178, repealed by 1978 PA 642, § 993; MCL 700.148; MSA 27.5148.

In contrast, the construction of a will's provisions is a matter which is considered after the will has been admitted to probate. See *In re Clayton Estate,* 320 Mich 152, 155; 30 NW2d 816 (1948). Moreover, when a will is subject to a "construction of a will" action, the litigant is not seeking to invalidate the will as in a "will contest." Rather, he acknowledges the will's validity, and seeks instead to discern the testator's intent through rules of construction, see MCL 700.130 *et seq.;* MSA 27.5130 *et seq.,* and to give effect to that intent. See *In re Bair Estate,* 128 Mich App 713; 341 NW2d 188 (1983).

Based on this long standing distinction between will contests and actions to construe wills, we do not find it within our authority to decide that the Legislature meant something broader than "will contest" when it employed this language in § 191(2). Rather, we find that the use of language describing a variety of will disputes in § 191(1), followed by use of the much narrower term "will contest" in § 191(2), suggests that the Legislature meant only to alter the inheritance tax consequences for settlements involving traditional will contests. Moreover, contrary to the Treasury Department's position on this issue, we do not believe that the Legislature's distinction is devoid of reason or wholly arbitrary. For, when one is contesting a will, he or she is attempting to nullify the will's validity. If successful and the will is presumed never to have been valid, it would seem illogical to look to the will's distribution scheme for purposes of assessing inheritance taxes. Indeed, it is difficult to conceive of the inheritance tax as "attaching" in accord with the distribution scheme of an invalid will. Thus, it appears reasonable that

the Legislature altered the operation of this legal fiction by looking to some other scheme, such as actual distribution, for situations where an action involving a will contest is settled.

In contrast, if one seeks to construe the provisions of a will, the fundamental assumption is that the will is valid. Consistent with this assumption, it is logical to view the property as being "transferred" at death pursuant to the will's distribution scheme. Thus, it is logical to conceive of the inheritance tax as "attaching at death." If one brings an action to construe the will, he or she is not seeking to alter the distribution contemplated by the testator, but to discover what distribution the testator intended. Thus, if settled, the taxation of inheritances will at least reflect a distribution scheme acknowledged to be valid.

In the present case, Lowell received her distribution pursuant to settlement of an action to construe Keith's will. Since she did not receive her portion of the estate "in settlement of a will contest," § 191(2) did not operate to alter the will's distribution scheme for inheritance tax purposes. Rather, pursuant to *Cress, supra,* the inheritance tax had to be assessed in accord with the distribution provided for in the will. Since the will made no provision for Lowell, the probate court properly cancelled the inheritance tax on her actual distribution.

Affirmed.