OXFORD TOWNSHIP v DEPARTMENT OF SOCIAL SERVICES

Docket No. 57579. Submitted July 14, 1982, at Lansing.—Decided
     October 5, 1982.

> Oxford Township brought an action in the Oakland Circuit Court
> against the Department of Social Services, the Department of
> Mental Health, Lakeville Manor, Inc., John T. Dempsey, Frank
> M. Ochberg and Richard Weber to enjoin the placement of six
> mentally ill adults at a licensed small-group adult foster care
> facility run by Lakeville Manor, Inc., alleging violation of the
> Oxford Township zoning laws and that small-group homes were
> not permitted by law to provide care for mentally ill adults.
> The court, Robert L. Templin, J., granted summary judgment
> for defendants. Plaintiff appealed. *Held:*
>
> 1. The Township Rural Zoning Act exempts adult foster care
> facilities, including small-group homes, from compliance with
> local zoning ordinances.
>
> 2. Any adult foster care facility licensed under the Adult
> Foster Care Facilities Licensing Act, including a small-group
> home, may provide care for mentally ill adults.
>
> Affirmed.

1. ZONING — MENTAL HEALTH — ADULT FOSTER CARE FACILITIES.

> The Township Rural Zoning Act exempts adult foster care facili-
> ties, including small-group homes, from compliance with local
> zoning ordinances (MCL 125.286a; MSA 5.2963[16a]).

2. MENTAL HEALTH — SMALL GROUP HOMES — ADULT FOSTER CARE
     FACILITIES.

> Any adult foster care facility licensed under the Adult Foster

REFERENCES FOR POINTS IN HEADNOTE

82 Am Jur 2d, Zoning and Planning §§ 158–161.

Supreme Court's views as to constitutionality of residential zoning
     restrictions. 52 L Ed 2d 863.

Housing facilities for former patients of mental hospital as violating
     zoning restrictions. 100 ALR3d 876.

Zoning regulations as applied to homes or housing for the elderly.
     83 ALR3d 1103.

Validity and construction of zoning regulations expressly referring
     to hospital, sanitariums, nursing homes. 27 ALR3d 1022.

Care Facilities Licensing Act, including a small-group home, may provide care for mentally ill adults (MCL 400.703[4], 400.703[7];.MSA 16.610[53][4], 16.610[53][7]).

*Suidara, Rentrop & Martin* (by *Gary R. Rentrop* and *Jeffery K. Haynes),* for plaintiff-appellant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Janis Meija* and *William K. Basinger,* Assistants Attorney General, for defendants Department of Social Services, Department of Mental Health, John T. Dempsey, and Frank M. Ochberg.

*Mars C. Riopelle, P.C.,* for defendants Richard Weber and Lakeville Manor, Inc.

*Jon T. Garrett,* for amicus curiae, Metropolitan Detroit Public Interest Law Center.

Before: ALLEN, P.J., and CYNAR and R. B. MARTIN,* JJ.

ALLEN, P.J. Plaintiff appeals from an April 20, 1981, order of summary judgment which permits operation of a foster care home for the mentally ill in Oxford Township.

Michigan Department of Social Services granted a license to Lakeville Manor, Inc., a nonprofit business, for the operation of a foster care small-group home, pursuant to the Adult Foster Care Facilities Licensing Act, MCL 400.701 *et seq.;* MSA 16.610(51) *et seq.* The facility provides care for six adult mentally ill women who were former patients of a state hospital. Such a facility is not a permitted use in a single-family residential district under Oxford Township's zoning ordinance.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On January 6, 1981, the township brought an action for injunctive and declaratory relief, alleging: (1) § 16a of the Township Rural Zoning Act, MCL 125.286a; MSA 5.2963(16a), does not exempt adult foster care facilities licensed under the Adult Foster Care Facilities Licensing Act from compliance with the Oxford Township zoning ordinance; and (2) the Adult Foster Care Facilities Licensing Act prohibits the placement of the mentally ill in adult foster care small-group homes. On April 20, 1981, the trial court granted defendants' motion for summary judgment finding that neither allegation stated a cause of action. Plaintiff appeals as of right from the order of summary judgment. We affirm.

As to plaintiff's first allegation, for the reason set forth in *Brandon Twp v North-Oakland Residential Services, Inc,* 110 Mich App 300, 306-309; 312 NW2d 238 (1981), we conclude that § 16a of the Township Rural Zoning Act, MCL 125.286a; MSA 5.2963(16a), exempts adult care facilities, including small-group homes, from compliance with local zoning ordinances. Consequently, plaintiff failed to state a cause of action for violation of the Oxford Township zoning ordinance.

Plaintiff's second allegation, that a foster care small-group home may not provide care for mentally ill adults under the Adult Foster Care Facilities Licensing Act, presents an issue of statutory construction of first impression.

An "adult foster care facility" is generally defined as:

"[A] governmental or nongovernmental establishment having as its principal function the receiving of adults for foster care. *It includes facilities and foster care family homes for adults who are aged, emotionally disturbed, developmentally disabled, or physically hand-*

*icapped* who require supervision on an ongoing basis but who do not require continuous nursing care." MCL 400.703(4); MSA 16.610(53)(4). (Emphasis added.)

There are basically four types of adult foster care facilities distinguished in part by the number of adults for which each is licensed to provide foster care. Each facility or home is defined as follows:

" 'Adult foster care congregate facility' means an adult care facility with the approved capacity to receive more than 20 adults to be provided with foster care. Beginning March 27, 1984, an adult foster care congregate facility which is licensed by the department to provide foster care in each respective category may receive only those adults in a category whose primary need for services is based upon not more than 1 of the following categories:

"(a) Aged condition.

"(b) *Mental illness,* developmental disability, or physical handicap, or a combination of mental illness, developmental disability, or physical handicap." MCL 400.703(3); MSA 16.610(53)(3). (Emphasis added.)

" 'Adult foster care family home' means a private residence with the approved capacity to receive 6 or fewer adults to be provided with foster care for 5 or more days a week and for 2 or more consecutive weeks. The adult foster care family home licensee shall be a member of the household, and an occupant of the residence." MCL 400.703(5); MSA 16.610(53)(5).

" 'Adult foster care large group home' means an adult foster care facility with the approved capacity to receive at least 13 but not more than 20 adults to be provided with foster care. Beginning March 27, 1984, an adult foster care large group home which is licensed by the department to provide foster care in each respective category may receive only those adults in a category whose primary need for services is based upon not more than 1 of the following categories:

"(a) Aged condition.

"(b) *Mental illness,* developmental disability, or physical handicap, or a combination of mental illness, developmental disability, or physical handicap." MCL 400.703(6); MSA 16.610(53)(6). (Emphasis added.)

" 'Adult foster care small group home' means an adult foster care facility with the approved capacity to receive 12 or fewer adults who shall be provided foster care." MCL 400.703(7); MSA 16.610(53)(7).

Relying on the emphasized phrases above, plaintiff argues the Legislature intended to prohibit placement of mentally ill persons in adult foster care small-group homes. First, plaintiff contends that an adult foster care facility, as defined in MCL 400.703(4); MSA 16.610(53)(4), provides foster care to the aged, emotionally disturbed, developmentally disabled or physically handicapped, but not to the mentally ill, because the condition is not listed in the statute. Next, plaintiff asserts that the definition of adult foster care small-group home, MCL 400.703(7); MSA 16.610(53)(7), incorporates the general definition of adult foster care facility and, therefore, a small-group home is intended to provide foster care only to those with the conditions specifically listed under the general definition of adult foster care facility. Since mental illness is not one of the enumerated conditions, such persons are excluded from small-group homes. Further, plaintiff contends that mentally ill persons were intended to reside only in the larger congregate facilities or large-group homes, as established by the express mention of the mentally ill, as opposed to emotionally disturbed, in those provisions, MCL 400.703, subds (3) and (6); MSA 16.610(53), subds (3) and (6). Plaintiff argues that limiting placement of the mentally ill to large institutions effectuates sound public policy. Plaintiff reasons that the larger facilities would neces-

sarily require sizable buildings in order to accommodate such a number of adults for foster care purposes. Such buildings would be found in areas zoned for institutions or hospitals and away from single-family residential neighborhoods, thus protecting these residents from dangerous mentally ill patients. We find plaintiff's arguments untenable for several reasons.

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the Legislature. *Melia v Employment Security Comm*, 346 Mich 544, 562; 78 NW2d 273 (1956). In ascertaining intent, we first look to the language of a statute. *People v Dunn*, 104 Mich App 419, 426; 304 NW2d 856 (1981). Legislative intent must be determined from consideration of all provisions of the enactment in question, *Braden v Spencer*, 100 Mich App 523, 530; 299 NW2d 65 (1980). Each word, sentence, and provision should be read together to harmonize the meaning, giving effect to the act as a whole. *General Motors Corp v Erves (On Rehearing)*, 399 Mich 241, 255; 249 NW2d 41 (1976).

Plaintiff's attempt to interpret the act as permitting placement of mentally ill individuals in congregate facilities and large-group homes, but not in small-group homes and family homes, is contrary to the clear statutory language. All four types of facilities are "adult foster care facilities", and as such, may care for individuals who are disabled, aged, emotionally disturbed, developmentally disabled or physically handicapped. We reject plaintiff's argument that placement of the mentally ill in foster care facilities is prohibited since the condition is not listed in the statute. To reiterate, an adult foster care facility is defined as:

"[A] governmental or nongovernmental establishment

having as its principal function the receiving of adults for foster care. *It includes facilities and foster care family homes for adults who are aged, emotionally disturbed, developmentally disabled, or physically handicapped who require supervision on an ongoing basis but who do not require continuous nursing care.*" (Emphasis added.)

The act specifically lists eight types of facilities or programs which are *not* to be included or considered as adult foster care facilities.[1] One of the exclusions is a hospital for the mentally ill or a facility for the developmentally disabled operated by the Department of Mental Health under the provisions of the Mental Health Code. The mentally ill are not generally excluded from adult foster care facility placement, and we believe that, had the Legislature intended to make such an exclusion, it would have specifically done so.

We also find the Legislature's use of the term "emotionally disturbed", rather than "mentally ill", is insignificant, and agree with the trial court that the words were intended to be interchangeable under the act. We are unpersuaded by plaintiff's attempt to create a definition of "emotionally disturbed" by combining dictionary definitions for "emotion" and "disturbed". Emotionally disturbed has a special meaning in the mental health field, and defendants and amicus curiae properly cite the "Psychiatric Glossary" published by the American Psychiatric Association for an authoritative definition of the term "Emotionally disturbed" is defined:

"Often used to describe a person with a *mental disorder.*"

[1] MCL 400.703, subds (4)(a) through (h); MSA 16.610(53), subds (4)(a) through (h).

"Mental disorder" is defined:

"Any psychiatric illness or disease included in the World Health Organization's *International Classification of Diseases,* or in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders,* Second Edition (1968). Many of these disorders are defined in this glossary."

"Mental illness" is defined:

"Same as *mental disorder.*"

We also note that, although mental illness is defined in the act,[2] emotionally disturbed is not, suggesting that the Legislature did not recognize a distinction between the two terms.

Finally, when a statute is ambiguous or of doubtful meaning, legislative intent may be found by looking at the purpose and objectives sought to be accomplished. *Smith v Grand Rapids City Comm,* 281 Mich 235, 239-241; 274 NW 776 (1937). There is no support for plaintiff's claim that the Legislature has sought to limit placement of the mentally ill to large institutions, and thereby segregate dangerous persons from the general population.[3] Instead, the Legislature has sought to provide and protect placement of the mentally handicapped in normal residential communities where appropriate. *Bellarmine Hills Ass'n v Residential Systems Co,* 84 Mich App 554, 558; 269 NW2d 673

---

[2] "Mental illness" is defined by the act as "a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 400.705(4); MSA 16.610(55)(4).

[3] Plaintiff improperly infers that all mentally ill persons are dangerous from § 401 of the Mental Health Code, MCL 330.1401; MSA 14.800(401). The provision states that an individual may be involuntarily committed to a hospital if he or she is mentally ill *and* dangerous to self or others *or unable to care for basic needs.*

(1978); Const 1963, art 8, § 8; County Rural Zoning Enabling Act, MCL 125.286a(2); MSA 5.2963(16a). This policy is further reflected by § 15 of the Adult Foster Care Facilities Licensing Act, MCL 400.715; MSA 16.610(65), which serves to decrease segregation of the mentally ill by discontinuing licensing for new congregate care facilities.

Since foster care small-group homes are exempt from compliance with the Oxford Township ordinance and placement of mentally ill persons in small foster care homes is not prohibited by the Adult Foster Care Facilities Licensing Act, the order granting summary judgment to defendants is affirmed.

Affirmed. No costs, a question of public interest being involved.