FIRST BANK OF CADILLAC v MILLER

Docket No. 66773. Submitted August 17, 1983, at Grand Rapids.—
    Decided February 6, 1984.

The First Bank of Cadillac, a state-chartered bank, loaned sub-
stantial sums to Max Miller, doing business as Miller & Son.
The proceeds of the loans were used primarily for the operation
of Miller's forest products business. The loans were secured by
equipment used in that business. The loan agreements provided
for interest rates of 10 or 11 percent with provisions that the
interest rate would rise to rates as high as 15 percent after the
due date of the notes. Miller defaulted on the notes and, at
about the same time, filed a petition for bankruptcy. The
trustee in bankruptcy was authorized to abandon the interest
of the bankrupt's estate in the collateral securing the loans.
The First Bank of Cadillac filed an action for claim and
delivery against Miller in Wexford Circuit Court, seeking pos-
session of the equipment used as collateral for the loans and a
money judgment. Defendant surrendered possession of the col-
lateral to the plaintiff, which sold the equipment at a public
sale. In his answer to plaintiff's complaint, defendant claimed
that the rates of interest on the loans were usurious and sought
to recover past interest paid and the amount by which the
proceeds of the sale of the equipment exceeded the amount
owed after the usurious interest was subtracted. The trial
court, Walter F. Ransom, J., agreed that the interest rates
charged were usurious and, following a bench trial, entered a
money judgment in favor of defendant and against plaintiff in
the amount of $26,450.29, plus attorney's fees. Plaintiff appeals.
*Held:*

1. The Banking Code contains provisions relative to the rates
of interest which state-chartered banks may charge. Since the
Banking Code was enacted after the general usury statute and

REFERENCES FOR POINTS IN HEADNOTES
[1, 4-8] 10 Am Jur 2d, Banks § 692.
[1] 45 Am Jur 2d, Interest and Usury §§ 2, 9, 18.
[2] 73 Am Jur 2d, Statutes §§ 255-257.
[3] 73 Am Jur 2d, Statutes §§ 200, 250.

is the more specific of the two statutes, the provisions of the Banking Code rather than the general usury statute will prevail when the provisions of those two statutes are in apparent conflict.

2. The Banking Code provides that a state-chartered bank on the type of loan at issue here may collect interest at the rate permitted by law for the same type of loan by federally chartered banking associations authorized to do business in this state.

3. A federally chartered bank is, by federal mandate, permitted to charge the maximum rate allowed by the laws of the state in which it is located to other lenders within that state making the same type of loan. This so-called "most favored lender" doctrine has the purpose of insuring that federally chartered banking associations will not be placed at a competitive disadvantage with respect to competing state-regulated lenders.

4. A state chartered credit union is a competing lender within the meaning of the "most favored lender" doctrine. A federally chartered banking association, therefore, may charge the same maximum interest rate of 15 percent as may be charged by this state's credit unions. Accordingly, pursuant to the provisions of the Banking Code, plaintiff, as a state-chartered bank, could properly charge that same maximum rate of interest of 15 percent.

5. Since the rate of interest charged by plaintiff on the subject loan was within the maximum set by the Banking Code, the trial court erred in finding the interest charged to be usurious.

Reversed.

1. INTEREST — BANKS AND BANKING — STATE-CHARTERED BANKS — BANKING CODE — USURY.

The rate of interest charged on loans made by state-chartered banks are governed by the provisions of the Banking Code rather than by the provisions of the general usury law where the provisions of the Banking Code are in apparent conflict with the provisions of the general usury statute (MCL 438.31, 487.491; MSA 19.15[1], 23.710[191]).

2. STATUTES — JUDICIAL CONSTRUCTION.

The more specific of two statutes which appear to be in conflict will prevail, especially where the specific statute was enacted subsequently to the more general statute.

3. STATUTES — JUDICIAL CONSTRUCTION.

Every word of a statute should be given meaning; no provision of a statute should be treated as surplusage or rendered nugatory.

4. INTEREST — BANKS AND BANKING — STATE-CHARTERED BANKS — NATIONAL BANKING ASSOCIATIONS.

The maximum rate of interest which may be charged on loans by a state-chartered bank, other than those types of loans specifically enumerated in the Banking Code, is the rate of interest permitted by law for the same type of loan made by national banking associations authorized to do business in the State of Michigan (MCL 487.491[d]; MSA 23.710[191][d]).

5. INTEREST — BANKS AND BANKING — NATIONAL BANKING ASSOCIATIONS.

The maximum rate of interest a national banking association may charge on loans which it makes is the greater of: (1) the rate of interest allowed by the laws of the state in which the national banking association is located to other lenders within that state, or (2) a rate of interest which is one percent above the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve District in which the national banking association is operating (12 USC 85).

6. BANKS AND BANKING — NATIONAL BANKING ASSOCIATIONS — "MOST FAVORED LENDER" DOCTRINE — INTEREST.

The purpose of the federal "most favored lender" doctrine is to guaranty that national banking associations will not be placed at a competitive disadvantage with respect to any state-regulated lender.

7. BANKS AND BANKING — NATIONAL BANKING ASSOCIATIONS — CREDIT UNIONS — "MOST FAVORED LENDER" DOCTRINE — INTEREST.

State-chartered credit unions, for the purpose of the "most favored lender" doctrine, are considered to be lenders in competition with national banking associations; accordingly, a national banking association may charge the same rate of interest as is permitted by law to be charged by a state-chartered credit union for a similar loan (12 USC 85).

8. INTEREST — STATE-CHARTERED BANKS — CREDIT UNIONS — BANKING CODE.

The maximum rate of interest charged by a state-chartered bank on loans for which there is not a specific limitation set forth in the Banking Code is the maximum rate permitted by state law

to be charged by state-chartered credit unions (MCL 487.491[d], 490.14; MSA 23.710[191][d], 23.494).

*Warner, Norcross & Judd* (by *James H. Breay* and *Louis C. Rabaut),* for plaintiff.

*Korn, Burns & Hogg, P.C.* (by *Robert A. Burns),* for defendant.

Before: DANHOF, C.J., and MACKENZIE and M. E. DODGE,* JJ.

M. E. DODGE, J. This is an appeal from a money judgment rendered against plaintiff. The judgment was the result of litigation which began as an action for claim and delivery under GCR 1963, 757.

Defendant borrowed substantial sums from plaintiff, a state-chartered bank. The loans were secured by equipment used in defendant's business. Defendant defaulted on the loans. At about the same time, he filed a petition for bankruptcy. The trustee in bankruptcy was authorized to abandon the interest of the bankrupt's estate in the collateral securing plaintiff's loans, based on a decision that the estate's interest had no realizable value. On July 22, 1977, plaintiff filed its action for claim and delivery, seeking possession of the equipment used as collateral and a money judgment. Defendant, by agreement, surrendered possession of the collateral to plaintiff on July 25, 1977. The equipment was sold at a public sale for $135,000 on September 12, 1977. On September 22, 1977, defendant first answered plaintiff's complaint. In his answer, defendant claimed that the interest rates charged him by plaintiff had been usurious. Defendant sought to recover past inter-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

est paid and the amount by which the proceeds of the sale of the equipment exceeded the amount owed after the usurious interest was subtracted. The judge agreed that the interest rates charged were usurious. After a nonjury trial, a judgment against plaintiff for $26,450.29 and attorney's fees were awarded to defendant.

On appeal, plaintiff has raised several unrelated issues. Because we agree with its claim that the rate of interest charged to defendant was not usurious, we do not address its claims concerning defendant's right as a bankrupt to assert the usury claim against plaintiff, defendant's surrender of possession as a bar to a claim for affirmative relief, and the effect of defendant's failure to answer the complaint in a timely fashion.

The written agreements between plaintiff and defendant provided for interest rates of 10% or 11% which rose as high as 15% after the due dates of the notes. At trial, the judge held that plaintiff's loans to defendant were limited by the rate of interest specified in MCL 438.31; MSA 19.15, that being 7%. MCL 438.31; MSA 19.15(1) is part of a general statute concerning usury which was enacted in 1966 (1966 PA 326). The statute's progenitor was first enacted in 1891; the present statutory usury rates were adopted in 1899.

On appeal, as at trial, plaintiff argues that it was allowed to charge the interest rates allowed to banks by MCL 487.491; MSA 23.710(191). We agree. In 1969, the Legislature enacted the Banking Code, MCL 487.301 *et seq.;* MSA 23.710(1) *et seq.* The code completely revised the state's usury laws as applied to banks. Herstein, *Michigan Usury Law,* 27 Wayne L Rev 435, 465 (1981). Section 191 of the Banking Code, MCL 487.491; MSA 22.710(191), provides that banks "may collect

interest and charges as follows". Subsections (a) through (c) govern bank interest rates on credit card arrangements and uniform installment loans (including motor vehicle loans). MCL 487.491(d); MSA 23.710(191)(d) states:

"On any loan not covered by subdivision (a), (b), or (c), a bank may charge, collect, and receive interest and other charges in the same manner and at up to the maximum rate or amount permitted by law for the same type of loans made by national banking associations authorized to do business in this state."

We believe that the trial judge erred by holding that plaintiff could not avail itself of the exceptions to the general usury rate for state banks contained in MCL 487.491; MSA 22.710(191). Where two statutes appear to be in conflict, the more specific statute will prevail especially if it was enacted subsequently to the more general one. *Manville v Wayne State University Board of Governors*, 85 Mich App 628, 636; 272 NW2d 162 (1978). State banks were exempted from the application of the interest rates in the usury statute by the provision of different interest rates in the Banking Code. Every word of a statute should be given meaning; no provision should be treated as surplusage or rendered nugatory. *Baker v General Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980). To apply the interest rates of the general usury statute to loans made by state banks, one must ignore the interest rates made specifically applicable to banks in the Banking Code. This would render the interest rate provisions of the Banking Code entirely nugatory. If the interest rates contained in the Banking Code are given effect, however, the interest rates in the general

usury statute will retain meaning because of their application to nonregulated lenders.

The trial judge reasoned that plaintiff's failure to qualify as a lender to a business entity under MCL 438.61; MSA 19.15 barred it from using the exceptions to the general interest rate contained in MCL 487.491; MSA 23.710(191). The "business entity exception" to the general interest rate of the usury law is one upon which all lenders may rely. There are many exceptions, however, that only limited classes of lenders may use. Herstein, *Michigan Usury Law, supra,* p 465. See also Conboy, *Permissible Charges in Michigan,* 62 Mich B J 540 (July, 1983). While a bank may avail itself of the "business entity exception", it may also rely on those exceptions specifically applicable to banks alone. One such exception is MCL 487.491(d); MSA 23.710(191)(d).

The loans to defendant clearly did not fall within subsections (a) through (c) of MCL 487.491; MSA 23.710(191). Plaintiff was allowed, therefore, to collect interest in the amount permitted by law for the same type of loan made by national banking associations authorized to do business in this state. This provision in the Banking Code, introduced by amendment in 1974, added great complexity to the law governing permissible interest rates for state banks because the federal laws which govern national banks incorporate state laws concerning permissible rates of interest. Herstein, *Michigan Usury Law, supra,* pp 465-466. To determine the highest permissible rate of interest allowed a state-chartered bank, one must first determine the highest rate allowed a national banking association. National banks may charge the greater of two interest rates: (a) the rate allowed by the laws of the state in which it is

located to other lenders within that state (this has become known as the "most favored lender" doctrine); or (b) 1% above the discount rate on 90-day commercial paper then in effect at the Federal Reserve Bank in the national bank's Federal Reserve District. 12 USC 85. Plaintiff in this case relies on its ability to emulate a national banking association using the "most favored lender" doctrine.

The "most favored lender" doctrine guarantees that national banking associations will not be placed at a competitive disadvantage with respect to any state-regulated lender. The doctrine was first adopted to allow a national bank to charge rates permitted only to natural persons acting as lenders in the State of Missouri. *Tiffany v National Bank of Missouri,* 85 US (18 Wall) 409; 21 L Ed 862 (1874). It has frequently been used to allow national banks to charge interest rates allowed by states only to small loan companies, credit card operations, and retail installment sellers. *Fisher v First National Bank of Omaha,* 548 F2d 255, 259-260 (CA 8, 1977); *Fisher v First National Bank of Chicago,* 538 F2d 1284, 1289-1290 (CA 7, 1976), *cert den* 429 US 1062; 97 S Ct 786; 50 L Ed 2d 778 (1977); *First National Bank in Mena v Nowlin,* 509 F2d 872 (CA 8, 1975); *Acker v Provident National Bank,* 512 F2d 729 (CA 3, 1975); *Partain v First National Bank of Montgomery,* 467 F2d 167 (CA 5, 1972); *United Missouri Bank of Kansas City, NA v Danforth,* 394 F Supp 774 (WD Mo, 1975); *Keresey v Nevada National Bank,* 98 Nev 316; 646 P2d 1224 (1982); *State ex rel Turner v First of Omaha Service Corp of Omaha,* 269 NW2d 409 (Iowa, 1978); *Comm'r of Small Loans v First National Bank of Maryland,* 268 Md 305; 300 A2d 685 (1973). See also Brophy, *State Usury Laws and*

*National Banks,* 31 Baylor L Rev 169 (1979), and Arnold & Rohner, *The Most Favored Lender Doctrine for Federally Insured Financial Institutions —What Are Its Boundaries?,* 31 Cath U L Rev 1, 5-7 (1981).

The "most favored lender" doctrine has been used to allow national banks to charge the same rates of interest allowed to state savings and loan associations. *Northway Lanes v Hackley Union National Bank & Trust Co,* 464 F2d 855 (CA 6, 1972). The same position has been adopted by regulation by the Comptroller of the Currency. 12 CFR 7.7310(a). See also Herstein, *Michigan Usury Law, supra,* p 485, fn 297. The same regulation covers any "competing state-chartered or licensed lending institution". In a staff interpretive letter, the Comptroller has specifically taken the position that state-chartered credit unions are competing lenders for purposes of the application of the "most favored lender" doctrine. OCC Staff Interpretive Letter No 255, Fed Bk L Rep (CCH), ¶ 85,419, p 77,534 (January 19, 1983). See also Herstein, *Michigan Usury Law, supra,* p 485, fn 296. In a formal opinion, this state's Attorney General has agreed that national banks may consider state-chartered credit unions as competing lenders. OAG, 1981-1982, No 5894, p 157 (May 1, 1981).

Plaintiff argues that state-chartered credit unions are competing lenders for purposes of the application of the "most favored lender" doctrine. Although important distinctions exist between credit unions and banks, these distinctions do not prevent credit unions from competing for borrowers with national banks. A credit union is allowed by state law to make loans to members for "provident or productive" purposes. MCL 490.4(b); MSA

23.484(2). The proceeds of plaintiff's loans to defendant were used primarily for the operation of his forest products business. The operation of a small business is a productive purpose. Although defendant also testified that some of the loan proceeds were used for "personal business", *e.g.,* the purchase of a pickup truck, the term "provident or productive" is sufficiently broad to encompass this purpose as well. The class of purposes for which credit unions may loan money ("provident" and "productive" ones) is sufficiently broad that credit unions might generally be considered to be competing lenders of national banks in the areas of consumer and small business credit.

We also believe that membership in credit unions is sufficiently large that national banks might be placed at a competitive disadvantage in a significant portion of the loan market if not allowed to loan money at the same rate of interest used by state credit unions. See Herstein, *Michigan Usury Law, supra,* p 486. We do not consider only the actual membership of credit unions, but also their potential membership. The potential for competition in the areas of business and personal loans is sufficiently great that state credit unions must generally be considered as competing lenders of national banks as a matter of federal law.

We note that the loans in this case were larger than those made by most state credit unions. See Herstein, *Michigan Usury Law, supra,* p 486. The limitations on amount used by credit unions are not, however, imposed by law. We believe that a national bank may rely on the "most favored lender" doctrine without showing that a specific competing state-regulated lender was willing to make the loan in question. We look instead to the statutory and regulatory scheme governing the

competing lender. If the statute allows the loan to be made by a competing lender at a specific interest rate, a national bank may avail itself of that rate so long as it complies with the "provisions of State law relating to such class of loans that are material to the determination of the interest rate". 12 CFR 7.7310. See *Keresey v Nevada National Bank,* 98 Nev 316; 646 P2d 1224 (1982).

Our conviction that state credit unions and national banks must be considered as competing lenders under 12 USC 85 is bolstered by the actions of Congress subsequent to the making of the loans in this case. In 1980, Congress enacted the Depository Institutions Deregulation and Monetary Control Act of 1980, 94 Stat 132 *et seq.;* 12 USC 226 (March 31, 1980). Sections 521 through 523 of that act extended the "most favored lender" doctrine to state-chartered banks, state- and federally chartered savings and loan associations and state-chartered credit unions whose deposits were insured. Opinion of the General Counsel, Federal Home Loan Bank Board, Fed Bk L Rep, ¶ 98,447, p 84,777-3, 1979-1980 Decisions Transfer Binder (September 19, 1980). See Conboy, *Permissible Charges in Michigan,* 62 Mich B J 540, 542-543 (July, 1983). But see Comment, *Extension of the Most Favored Lender Doctrine Under Federal Usury Law: A Contrary View,* 27 Villa L Rev 1077 (1981-1982). The inclusion of credit unions among the lenders protected by Congress's wide-ranging preemption of state usury laws is convincing proof that credit unions are to be considered competing lenders under the "most favored lender" doctrine. See Nicewander, *The Laws of Usury As Applied to Texas Banks and Foreign Banks Lending in Texas,* 14 Tex Tech L Rev 781, 791 (1983).

Because state credit unions and national bank-

ing associations are competing lenders under the "most favored lender" doctrine, national banking associations may charge the same rate of interest allowed by law to be charged by state credit unions. This rate is 15%. MCL 490.14; MSA 23.494. With the exception of certain classes of loans (not relevant here), the maximum rates of interest which state banks may charge is the same as that allowed to national banks. See MCL 487.491(d); MSA 23.710(191)(d). The trial judge erred reversibly by holding that the rates of interest on the loans to defendant were limited to 7%. The maximum rate allowable by law was the same rate allowed at that time to state credit unions, 15%.

Reversed. No costs, a question of first impression.