HERP v LANSING CITY CLERK

Docket No. 98709. Submitted May 14, 1987, at Lansing. Decided
October 27, 1987. Leave to appeal denied, 429 Mich 898.

Margaret Herp and others filed a complaint for mandamus to
compel the Lansing City Clerk to certify certain referendum
petitions and for the city elections commission to hold the
petitioned-for election regarding a proposed bond issue of the
city's building authority. The city's building authority and
others were permitted to intervene as defendants. The petitions
in question did not identify the person or entity circulating the
petitions and, for that reason, the city clerk refused to certify
the petitions. The Ingham Circuit Court, James R. Giddings, J.,
granted summary disposition for defendants and intervening
defendants, holding that the petitions failed to meet the re-
quirements of both the building authority act and the home
rule cities act. Plaintiffs appealed.

The Court of Appeals *held:*

The city clerk has the authority to reject petitions that do
not contain the name of the persons or organization responsible
for their circulation, as required by the home rule cities act.

Affirmed.

J. P. SWALLOW, dissented. He would hold that judges should
strictly construe statutes which impose requirements of form
upon petitions when the effect of invalidation is to deny public
referendum upon a governing body's power to impose a public
burden. He noted that the record did not disclose that anyone
was misled or would have refused to sign if they had known the
identity of the circulating organization. He would hold the
petitions to be in substantial compliance with the statute and
would direct the city clerk to certify them.

1. MUNICIPAL CORPORATIONS — CITY CLERKS — REFERENDUM PETI-
TIONS — BUILDING AUTHORITY ACT — HOME RULE CITIES ACT.
The building authority act authorizes a city clerk to reject

REFERENCES

Am Jur 2d, Initiative or Referendum § 39.

Am Jur 2d, Mandamus §§ 31 *et seq.* 466.

See the annotations in the Index to Annotations under Initiative
and Referendum.

See the annotations in the Index to Annotations under Mandamus.

referendum petitions on full faith and credit general obligation contracts based on standards provided in the several subsections of § 25 of the home rule cities act including the omission of the names of the persons or organization sponsoring the circulation of the petitions (MCL 117.25, 123.958b; MSA 5.2104, 5.301[8b]).

2. MANDAMUS — BURDEN OF PROOF.

Mandamus lies only when there is a clear legal duty incumbent on a defendant and a clear legal right in the plaintiff to the discharge of such duty; the burden of establishing a clear legal duty on the part of the defendant is on the person seeking mandamus.

*Tom Downs* and *Randall W. Kraker* (by *Michael A. Zagaroli*), *Varnum, Riddering, Schmidt & Howlett* (by *Robert J. Elevelo*), and *Tim Downs,* for plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *John D. Pirich, P.C.* and *Michael J. Hodge*), and *Alvan P. Knot,* Lansing City Attorney, for defendants and intervening defendants.

Before: MacKenzie, P.J., and J. H. Gillis and J. P. Swallow,* JJ.

Per Curiam. This case involves the sufficiency of certain referendum petitions submitted by plaintiffs to defendant city clerk regarding a proposed bond issue by the City of Lansing Building Authority. Plaintiffs appeal as of right from an order granting summary disposition in favor of defendants and intervening defendants and dismissing plaintiffs' complaint for mandamus to compel Lansing city officials to hold the petitioned-for referendum election. We affirm.

The building authority act, MCL 123.951 *et seq.*; MSA 5.301(1) *et seq.*, authorizes municipalities to incorporate a building authority for the purpose of

* Circuit judge, sitting on the Court of Appeals by assignment.

acquiring building sites, buildings, and appurte-
nant facilities for any legitimate public purpose.
See MCL 123.951; MSA 5.301(1). Methods of acqui-
sition include purchase and construction. See MCL
123.959; MSA 5.301(9). Essentially, under the act,
the authority pays for the acquisition of the site
and the construction of the building and facilities
and then leases the property to the municipality
(referred to in the act as the "incorporating unit").
The authority finances the project by issuing
bonds, and the lease proceeds are used to dis-
charge the bonded indebtedness. When the bonds
are retired, the authority conveys the property to
the incorporating unit.

On September 8, 1986, the City of Lansing, the
Lansing Building Authority, and private developer
B & A of Michigan entered into an agreement
providing for the development of a conference
center, parking ramp, urban site, and hotel in
downtown Lansing. Under the agreement, and
pursuant to the building authority act, the build-
ing authority would construct the conference cen-
ter and parking ramp, financed with bond issues,
and lease both to the city. The city would develop
the public site with either public sources or build-
ing authority bonds. B & A would build the hotel
at its sole expense. Hotel construction would be
contingent upon the construction of the conference
center, parking ramp, and public site. At issue in
this case is the building authority's bond issue to
finance the conference center portion of the proj-
ect.

Under the building authority act, one type of
bond which an authority may issue to finance the
acquisition of buildings is a bond issue backed by
the full faith and credit of the incorporating unit.
When this type of financing is used, the authority
issues bonds upon the execution of a full faith and

credit general obligation contract of lease between the incorporating unit and the building authority. See generally, MCL 123.958a; MSA 5.301(8a), MCL 123.958b; MSA 5.301(8b), and MCL 123.961; MSA 5.301(11). In this case, such a contract of lease between the city and the building authority was anticipated to finance the construction of the conference center. Execution of full faith and credit general obligation contracts of lease is governed by § 8b of the building authority act, MCL 123.958b; MSA 5.301(8b). Section 8b provides in pertinent part:

The governing body of an incorporating unit or units may, by a majority vote of its elected members, authorize the execution of a full faith and credit general obligation contract of lease with an authority, and the contract so authorized may be executed and delivered without a vote of the electors thereon. The contract shall not become effective until 45 days after a notice of intention of entering into the contract has been published in a newspaper of general circulation in the incorporating unit or units and no petition for referendum requesting an election on the contract has been filed with the clerk or other recording officer thereof within the 45-day period. The referendum petition, if filed, shall be signed by not less than 10% or 15,000 of the registered electors of the incorporating unit, whichever is less. *If a proper petition is filed the contract shall not become effective unless approved by a majority of the electors of the incorporating unit* or units voting thereon at a general or special election. . . . Signatures on the petition shall be verified by the circulator under oath as the actual signatures of the persons whose names are signed thereto and *the clerk or other recording officer of the incorporating unit shall have the same power to reject signatures and petitions as city clerks under section 25 of Act No. 279 of the Public Acts of 1909,*

*as amended, being section 117.25 of the Michigan Compiled Laws.* [Emphasis added.]

MCL 117.25; MSA 5.2104, referred to in § 8b, is part of the home rule cities act, MCL 117.1 *et seq.*; MSA 5.2071 *et seq.* It provides in relevant part:

Sec. 25. (1) An initiatory petition authorized by this act shall be addressed to and filed with the city clerk. *The petition shall state what body or organization,* if any, or if no body or organization, then what persons are *primarily interested in and responsible for the circulation of the petition* and the securing of the amendment. Each sheet of the petition shall be verified by the affidavit of the person who obtained the signatures to the petition . . . . Each signer of the petition shall inscribe upon it, immediately after his or her signature, the date of signing and his or her street address. Any signatures obtained more than 1 year before the filing of the petition with the city clerk shall not be counted.

(2) *The verification shall state that the petition was circulated at the request of and pursuant to the directions of the association, organization, or persons desiring the amendment* and shall also state that the signatures were obtained by the person verifying the petition; that the signatures are the signatures of the persons purporting to sign the same and that each of them signed in his or her presence; and that the person verifying the petition has good reason to believe and verily does believe that the signers of the petition thereof are duly registered electors of the municipality and are the identical persons their signature purport them to be.

* * *

(4) *Upon receipt of the petition, the city clerk shall canvass it to ascertain if it has been signed by the requisite number of registered electors. For*

*the purpose of determining the validity of the petition, the city clerk may cause any doubtful signatures to be checked against the registration records of the city.* Within 45 days from the date of the filing of the petition, the city clerk shall certify the sufficiency or insufficiency thereof. If the petition contains the requisite number of signatures of registered electors, the clerk shall cause the proposed amendment to be submitted to the electors of the city at the next regular municipal or general state election held in the city which shall occur not less than 90 days following the filing of the petition.

\*  \*  \*

(8) Any person aggrieved by any action, or failure of action, of the city clerk may bring an action against the clerk in the circuit court for writ of mandamus or for other appropriate relief. [Emphasis added.]

Sometime prior to September 28, 1986, the Lansing City Council approved and executed a full faith and credit general obligation contract of lease with the Lansing Building Authority for the conference center. Pursuant to § 8b of the building authority act, the city clerk placed a notice in the *Lansing State Journal* on September 28, 1986. The notice informed the public that the contract of lease would become effective in forty-five days unless petitions requesting a referendum were filed within that time period.

On November 12, 1986, the Lansing Taxpayers Association filed petitions signed by 14,887 persons, including plaintiffs, requesting a referendum on the full faith and credit general obligation contract of lease for the conference center. The petitions did not disclose the organization sponsoring their circulation, a requirement under § 25 of

the home rule cities act, quoted above.[1] By letter dated December 17, 1986, the city clerk notified the association's attorney that the petitions would not be certified because, although they contained a sufficient number of signatures, the city attorney had opined that the petitions did not meet the requirement of § 25 that they state the name of the organization or persons responsible for their circulation.

On December 22, 1986, pursuant to subsection 25(8) of the home rule cities act and MCR 3.305(A)(2), plaintiffs filed a complaint for mandamus against defendants city clerk and city election commission requesting the court to compel submission of the full faith and credit general obligation contract of lease and bond issue to the voters. Defendants and intervening defendants (all of whom were joined pursuant to MCR 2.209(B) on January 5, 1987) countered that the city clerk had no duty to submit the question to the voters because the petitions were defective. Plaintiffs subsequently filed a motion for summary disposition pursuant to MCR 2.116(C)(10) and defendants and intervening defendants (defendants) filed motions for summary disposition pursuant to MCR 2.116(C)(8) and (10). Following a hearing, the trial court granted summary disposition in favor of defendants.

In granting summary disposition, the circuit

---

[1] Nor did the petitions comply with the requirements of § 544c of the Michigan Election Law, MCL 168.1 *et seq.*; MSA 6.1001 *et seq.*, that "except as otherwise expressly provided . . . all petitions circulated under authority of the election law" must carry a warning to signatories and a warning to circulators. MCL 168.554c; MSA 6.1544(3). The city attorney and the circuit court opined that the instant petitions' failure to carry such warnings rendered them invalid. We express no opinion as to whether the § 544c warnings apply to plaintiffs' § 8b petitions. Similarly, we do not decide whether § 544c, as applied to § 8b referendum petitions, constitutes an unconstitutional limitation on the right to petition and to vote.

court held that a § 8b referendum petition must meet the petition requirements of both § 8b of the building authority act and § 25 of the home rule cities act. Because plaintiffs' petitions failed to disclose the organization or persons sponsoring the petitions (according to defendants, persons and groups with interests in two Lansing hotels), as required by §§ 25(1) and (2), the court held that defendant city clerk had no duty to certify the petitions for a referendum vote. Accordingly, the court concluded, mandamus would not lie.

Plaintiffs contend that the circuit court erred in reading the requirements of §§ 25(1) and (2) into § 8b of the building authority act. According to plaintiffs, § 8b contains all of the requirements for a § 8b referendum petition. Plaintiffs assert that the reference to § 25 of the home rule cities act contained in § 8b was not intended to impose further petition requirements, but pertains only to the power of the clerk to reject petitions. Since the power to reject petitions is found only in § 25(4), and since that power includes only the power to reject for an insufficient number of signatures, plaintiffs maintain that the petitions could not be rejected for failure to disclose sponsorship. We disagree.

A basic rule of statutory construction is that, where the Legislature uses certain and unambiguous language, the plain meaning of the statute must be followed. *Browder v International Fidelity Ins Co,* 413 Mich 603, 611; 321 NW2d 668 (1982). Rules of statutory construction also require that force and meaning be given to every word and clause in a statute. *First Bank of Cadillac v Miller,* 131 Mich App 764; 347 NW2d 715 (1984); *Oxford Twp v Dep't of Social Services,* 120 Mich App 103; 327 NW2d 409 (1982). Section 8b expressly states that a full faith and credit general obligation

contract of lease entered into pursuant to the building authority act shall not become effective if "a *proper petition* is filed." (Emphasis added.) Section 8b then provides that "the clerk . . . shall have the same power to reject signatures *and petitions* as city clerks under section 25." (Emphasis added.) Faced with this clear language, we can only conclude that § 8b authorizes the city clerk to reject petitions, as well as signatures, and that the several subsections of § 25—not simply § 25(4)—provide the standards to be employed in rejecting petitions. To read § 8b otherwise would render the clear language of § 8b meaningless.

Plaintiffs' position that the Legislature intended § 8b to be complete in itself in setting the criteria for a proper petition is wholly without merit. Section 8b, for example, provides that signatories must be registered electors of the incorporating unit but does not contain a requirement that the signatures be accompanied by an address. That requirement is found is § 25(1). Since a proper canvass of the petitions under § 8b to verify whether a signatory is a registered elector of the incorporating unit may be had only when the address requirement of § 25(1) is met, plaintiffs cannot persuasively argue that § 8b is a complete statement of petition requirements. By incorporating § 25 into § 8b, the Legislature must have intended that § 25's petition requirements apply to § 8b referendum petitions.

Plaintiffs' contention that the only reason § 8b refers to § 25 as a whole rather than § 25(4) specifically is because § 25 was not divided into subsections when § 8b was enacted is similarly unpersuasive. The Legislature could have easily amended § 8b to reflect the reorganization of § 25 into subsections if it had intended that only § 25(4) be

incorporated into the building authority act. It has not seen fit to do so.

Nor does an examination of § 25 itself suggest that that statute was intended to empower the clerk to certify or reject petitions solely on the basis of the adequacy of the signatures rather than the adequacy of the petitions themselves. It should not be supposed that any section of a statute has no purpose. *Northville Coach Lines, Inc v Detroit,* 2 Mich App 591; 141 NW2d 316 (1966), aff'd 379 Mich 317; 150 NW2d 772 (1967). If the city clerk did not have the power under subsection (4) to reject petitions that did not comply with petition requirements of subsections (1) and (2), then those requirements would be unenforceable and have little or no force or effect. In order to give full effect to § 25, it must be read as granting the city clerk the power under § 25(4) to reject petitions that do not meet the petition requirements of §§ 25(1) and (2), including the requirement that the name of the organization or persons responsible for circulation of the petition be stated on the petition.[2]

Plaintiffs note that, in 1969, § 25 was amended to delete the phrase "and in all other respects conforms to the provisions of this section" with reference to the clerk's duty to examine a petition and certify its sufficiency. See 1969 PA 114. Plaintiffs argue that deletion of the phrase shows legis-

---

[2] Moreover, as defendants point out, cities may issue full faith and credit general obligation bonds under the home rule cities act. The issuance of such bonds is subject to referendum and the referendum is subject to the provisions of § 25. See MCL 117.5(g); MSA 5.2084(7), and MCL 117.21; MSA 5.2100. If plaintiffs' position were sustained, it would result in building authority full faith and credit general obligation bond referendum petitions being treated differently than city full faith and credit general building bond referendum petitions. Given the substantial similarity between § 5g of the home rule cities act and § 8b of the Building Authority Act, we doubt that this was the Legislature's intent.

lative intent to preclude the city clerk from checking petitions for anything other than verification of signatures. However, the 1969 amendment rewrote subsection (4) in its entirety, not so much deleting the phrase as substituting it with the current "canvass" language. The Supreme Court had long held that to "canvass" entails more than merely passing upon the sufficiency of signatures; it also includes consideration of the petition itself. See, e.g., *Scott v Secretary of State,* 202 Mich 629; 168 NW2d 709 (1918), and *Leininger v Secretary of State,* 316 Mich 644; 26 NW2d 348 (1947). We assume that the Legislature was aware of this long-standing definition and legislated in harmony with it. Consequently, we do not believe that 1969 PA 114 was intended to diminish the clerk's authority to pass upon the sufficiency of both the petition and the signatures thereon.

Plaintiffs also argue that § 25(1) pertains to initiatory petitions only and the petitions in the instant case are not initiatory. However, plaintiffs fail to note that subsection (4), which they argue *does* apply to § 8b, refers to "the proposed amendment," also an initiatory measure. No one could dispute that § 25 was enacted with charter amendments in mind. However, the Legislature clearly intended to incorporate § 25 into the § 8b bond referendum provisions of the building authority act. The Legislature's intent will not be nullified merely because some of the language of § 25 refers to charter amendments. Rather, the city clerk must be given the same power to reject signatures and petitions under § 8b that is given under § 25. We hold that, under § 25, the city clerk may reject petitions that do not contain the name of the organization or persons responsible for their circulation. We further hold that the Legislature in-

tended that the city clerk have the same power under § 8b.[3]

Plaintiffs assert that, even if the circuit court was correct in "stacking" the provisions of § 8b and § 25, the petitions in this case still substantially comply with those requirements. We cannot agree. Plaintiffs' petitions did not state the name of the organization or persons responsible for circulation as required by § 25 of the home rule cities act. This deficiency was not a mere technical noncompliance, but a wholesale exclusion of statutorily mandated disclosure information. The trial court did not err in ruling that the petitions were insufficient.

Mandamus is an extraordinary remedy and is discretionary with the court. *Bd of County Road Comm'rs of Oakland Co v State Highway Comm,* 79 Mich App 505; 261 NW2d 329 (1977), lv den 402 Mich 907 (1978). It lies only where there is a clear legal duty incumbent on the defendant and a clear legal right in the plaintiff to the discharge of such duty. *Id.* The burden of establishing a clear legal duty by the defendant is placed on the person seeking mandamus. *Burger King Corp v Detroit,* 33 Mich App 382, 384; 189 NW2d 797 (1971). In this case, plaintiffs have not persuasively demonstrated that the city clerk had a clear legal duty to certify their petitions as sufficient under § 8b of the building authority act. The circuit court did not abuse its discretion in dismissing their complaint for mandamus.

Affirmed.

---

[3] Plaintiffs, as a separate issue, suggest that the circuit court incorrectly applied the rule in pari materia in construing § 8b and § 25. We need not address the merits of this issue since, assuming arguendo that plaintiffs are correct, under our holding the circuit court reached the right result. See, e.g., *Compton v Joseph Lepak DDS, PC,* 154 Mich App 360; 397 NW2d 311 (1986).

J. P. Swallow, J. *(dissenting)*. The Legislature, by enacting § 8(b) of the building authority act, MCL 123.958; MSA 5.301(8b), clearly intended to provide the electorate a check and balance over a governing body which would seek to encumber municipal revenue to guarantee the financial success of any building project; in this case a conference center and parking ramp.

The petitions in question were timely filed, meticulously canvassed by the city clerk and found to contain sufficient valid signatures of registered voters so as to qualify for ballot placement. The reason for refusal to certify as given by the city clerk is that the petition format fails to disclose the Lansing Taxpayers Association as the organization responsible for their circulation.

The building authority act does not expressly require such disclosure. To support that requirement, the city clerk must layer together § 8b of the building authority act with § 25 of the home rule cities act, MCL 117.25; MSA 5.2104. I disagree with that construction of the statute for, in my opinion, judges should strictly construe statutes which impose requirements of form upon petitions when the effect of invalidation would be to deny public referendum upon a governing body's power to impose a public burden. *Alan v Wayne Co,* 388 Mich 210; 200 NW2d 628 (1972). See also *Newsome v Bd of State Canvassers,* 69 Mich App 725; 245 NW2d 374 (1976), lv den 397 Mich 833 (1976). I would also note that the record below does not show that any petition signer was misled because of nondisclosure of the organization circulating the petitions, nor is it claimed that anyone who signed the petitions would have refused to sign them had they known the identity of the circulating organization. The petitions, in my opinion, are clear on

their face and anyone signing them should have understood their purpose and intent.

I would hold that there has been substantial compliance with the statute and direct the city clerk to certify the petitions.