UNITED OF OMAHA LIFE
INSURANCE COMPANY,
Plaintiff,

v.

Shelby P. SOLOMON and William
S. Warstler, Defendants,

and

Maccabees Life Insurance Company,
Intervenor–Defendant.

No. 5:90–CV–81.

United States District Court,
W.D. Michigan, S.D.

Oct. 30, 1990.

man, Lansing, Mich., for United of Omaha Life Ins. Co.

Todd H. Cohan, Frank J. Kelley, Atty. Gen., Tort Defense Div., Deborah Anne Devine, Asst. Atty. Gen., Lansing, Mich., for Shelby P. Solomon and William S. Warstler.

Clifford T. Flood, Lawrence D. Owen, Louis B. Reinwasser, Miller, Canfield, Paddock & Stone, Lansing, Mich., for Maccabees Life Ins. Co.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

### I.

This matter is before the Court as a result of a decision by the defendants to rebid a contract for life, accidental death, and dismemberment insurance for state employees, retirees, and dependents. Pending before the Court is United of Omaha Life Insurance Company's ("Omaha") motion for a preliminary injunction barring the rebid. Also pending is a motion to dismiss the complaint filed by the defendants, Shelby P. Solomon, the Director of the Michigan Department of Management and Budget, and William S. Warstler, the Director of the Office of Purchasing, and a motion for judgment on the pleadings filed by the intervening defendant, Maccabees Life Insurance Company ("Maccabees"). After conducting an evidentiary hearing on October 22, 1990, the Court is prepared to rule on these matters.

### II.

On March 15, 1990, defendant Warstler, on behalf of the State of Michigan, authorized the issuance of a "Request for Quotation" ("RFQ") soliciting sealed price quotations for a contract to provide life, accidental death, and dismemberment insurance to employees and retired employees of the State of Michigan and their respective dependents. The RFQ stated certain absolute requirements pertaining to the qualifi-

Joseph A. Fink, Peter H. Ellsworth, Dickinson, Wright, Moon, Van Dusen & Free-

cations of prospective bidders.[1] It further stated that if a prospective bidder failed to comply with any one of these requirements its bid would not be considered.

Maccabees and the plaintiff both submitted bids for the proposed insurance contract. On May 14 or 15, 1990, the Office of Purchasing determined that the plaintiff's bid was the lowest bid submitted by an insurer who met all of the specifications set forth in the RFQ. Since Maccabees did not meet the qualifications set forth in the RFQ, its bid was not considered by the purchasing office. After all bids were opened and reviewed, the Office of Purchasing recommended that the contract be awarded to the plaintiff.

On May 25, 1990, the intervening defendant filed an appeal with defendant Warstler of the Office of Purchasing's recommendation that the plaintiff be awarded the contract. The basis for the appeal was Maccabees' belief that the specifications set forth in the RFQ were overly restrictive. On June 21 1990, defendant Warstler held an informal hearing regarding Maccabees' appeal. Other parties interested in the outcome of this appeal such as the plaintiff or other providers of insurance products were given no notice of either the appeal or the hearing.

Defendant Warstler issued his decision on July 12, 1990. He agreed with Maccabees' contention that the specifications set forth in the RFQ were overly restrictive. As a remedy, he ordered that a new solicitation of bids be held.

The plaintiff brings this civil rights action against defendant Warstler and his superior, defendant Solomon, as a result of the decision to rebid the insurance contract. The amended complaint alleges that this decision did not comply with the policies and procedures applicable to the competitive bidding of state contracts. Since the defendants allegedly did not comply with these procedures, the plaintiff asserts that it has been deprived of a protected interest without due process.

III.

▮ Factors the Court must "carefully balance" in deciding whether to issue a preliminary injunction include:

(1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

(2) whether the movant has shown irreparable injury;

(3) whether the preliminary injunction could harm third parties;

(4) whether the public interest would be served by issuing the preliminary injunction.

*Frisch's Restaurant, Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1263 (6th Cir.1985).

A.

▮ Before it can claim that it has been denied procedural due process, the plaintiff must show that it had a protected property or liberty interest. In order to have a protected interest, the plaintiff must have a legitimate claim of entitlement to it. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property or liberty interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from some other source. *Id.* The terms property and liberty denote a broad range of interests that are secured by existing rules or understandings. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Thus, if a statute, regulation, or other policy statement by the State limits an official's discretion, a protected interest has been created that cannot be taken without due process. *Bills v. Henderson,* 631 F.2d 1287, 1291–93 (6th Cir.1980).

▮ Under Michigan law, the State is required to solicit competitive bids for state contracts whenever practical. Mich.Comp. Laws Ann. § 18.1261(1). Moreover, the Department of Management and Budget

---

**1.** These specifications dealt with matters such as the amount of life insurance a prospective bid-der had in force, its capital surplus, and its credit rating.

has been granted the authority to make all discretionary decisions concerning the solicitation, award, amendment, cancellation, and appeal of state contracts. *Id.* § 18.-1261(2). The defendants argue that the decision to rebid the insurance contract was simply an exercise of this discretionary authority.

On the other hand, the plaintiff argues that the defendants have imposed limits on their authority by holding out a publication entitled "Doing Business With The State of Michigan—A Guide for Vendors" ("Vendors Guide") as their solicitation policy. This booklet states in its introduction that its purpose is to acquaint vendors with the State's purchasing practices and policies. Vendors Guide at 1. According to the testimony of defendant Warstler, this manual is being used by the Office of Management and Budget to administer the State's competitive bidding scheme in lieu of formal administrative rules. Moreover, the existence of this guide is well known in the Michigan business community and it is freely available to the public either through the Michigan Freedom of Information Act, *see* Mich.Comp.Laws Ann. §§ 15.231 *et seq.*, or by simply stopping by defendant Warstler's office and asking for a copy.

This document states that a new solicitation of bids for a state contract will occur in only a few limited circumstances. If none of the bids meet the terms and conditions set forth in the RFQ or if all of the bids exceed the agency's cost estimate, the State may rebid the solicitation. Vendors Guide at 17–18. A solicitation may also be rebid if the Office of Purchasing granted a vendor's appeal raising an error in the decision concerning a solicitation, award, or proposed award. *Id.* at 18.

However, a vendor may argue on appeal that the specifications set forth in the RFQ were inappropriate only if it has raised an objection to them at least seven days prior to the bid due date. *Id.* at 22. In the present case, Maccabees did not timely object to the specifications. Yet, the basis for Maccabees' appeal was its belief that the required specifications were too rigid. Obviously, the decision by defendant Warstler to grant Maccabees' appeal was inconsistent with the practices and procedures set forth in the "Vendors Guide."

Based on the evidence before it, the Court is of the opinion that the "Vendors Guide" serves as a *de facto* administrative scheme implementing the Michigan Legislature's desire for the State to competitively bid contracts whenever possible. Moreover, since the booklet explicitly states under what conditions a rebid may occur and contains no statement suggesting that the defendants possess the discretion to reject bids for any reason or for no reason, it also serves to structure the exercise of statutory discretion granted to the Department of Management and Budget. Indeed, unfettered discretion on the part of those responsible for operating the competitive bidding scheme would result in confusion since there would be, in effect, no standards to assist those involved in this process. Thus, the defendants, in order to implement the wishes of the State Legislature in a pragmatic manner, have imposed limits on the discretionary authority granted to them by statute.[2]

A number of cases have either held or suggested that a protected interest exists with respect to a benefit which is sought but not yet obtained whenever a state law or policy limits the exercise of discretion by

---

**2.** The RFQ instructions do state that the State Purchasing Director may reject all bids if he believes that the best interests of the State will be served. The defendants use this statement to buttress their argument that they have the discretion to reject all bids for any reason.

The Court finds this position unpersuasive for a number of reasons. These instructions have not been revised since May of 1985. The "Vendors Guide" was not even in existence at that time. Moreover, the "Vendors Guide," unlike the RFQ instructions, states that its purpose is to

acquaint vendors with the purchasing practices and policies of the State of Michigan. Thus, a vendor could reasonably conclude that this publication, not the RFQ instructions, sets forth the State's competitive bidding policies. Consistent with that understanding, a vendor could also conclude that any discrepancy between the RFQ instructions and the "Vendors Guide" is simply the result of the State's failure to update the instructions so that they accurately reflect the competitive bidding policies outlined in the "Vendors Guide."

the state official responsible for conferring the benefit. *E.g., Board of Pardons v. Allen,* 482 U.S. 369, 379–80 n. 10, 107 S.Ct. 2415, 2421–22 n. 10, 96 L.Ed.2d 303 (1987); *Green v. Black,* 755 F.2d 687, 688 (8th Cir.1985); *Winsett v. McGinnes,* 617 F.2d 996, 1007 (3d Cir.1980), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981). These decisions can be viewed as recognizing the existence of the most basic and fundamental protected interest known to this society. Simply stated, this interest is the expectation, shared by all, that the state will follow the rules in its dealings with the public. Therefore, the Court believes that the failure of the defendants to comply with the procedures established by them for handling vendor appeals deprived the plaintiff of this protected interest.

■ Even if a plaintiff successfully establishes the existence of a state-created property or liberty interest, it is entitled to redress under Section 1983 only if there is no adequate state remedy. *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 986–87, 108 L.Ed.2d 100 (1990); *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). Even an unauthorized and intentional deprivation of a property or liberty interest does not constitute a violation of procedural due process if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). Moreover, the failure of the state remedy to supply the plaintiff with all the relief that may have been available under Section 1983 does not render the procedure inadequate to satisfy the requirements of due process. *Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917.

■ In the present case, it appears to the Court that an adequate state remedy is not available to the plaintiff. Since the "Vendors Guide" has not been promulgated as a set of formal administrative rules, review of the defendants' decision by a Michigan circuit court is not available. This guide also does not permit a subsequent appeal by a party such as the plaintiff that has been adversely affected by the decision to resolicit a contract. Finally, since no contract between the plaintiff and the State exists, an action alleging breach of contract is not available to the plaintiff.

■ Maccabees suggests in a single sentence of its reply brief in support of its motion that *mandamus* may be an adequate state remedy for any deprivation suffered by the plaintiff in the present case. *Mandamus* can serve as an adequate state remedy for the deprivation of a protected interest. *E.g., New Burnham Prairie Homes v. Village of Burnham,* 910 F.2d 1474, 1480 (7th Cir.1990). However, *mandamus* traditionally has been used only as a vehicle to enforce clearly established rights and not as a means to determine whether a right exists. *E.g., Pennsylvania v. National Ass'n of Flood Ins.,* 520 F.2d 11, 25–26 (3d Cir.1975); *Detroit Trust Co. v. State Highway Comm'r,* 295 Mich. 449, 453, 295 N.W. 222 (1940). Therefore, a Michigan court will grant *mandamus* only if there is a clear legal duty on the part of the defendant and the plaintiff possesses a clear legal right to the discharge of that duty. *E.g., Herp v. Lansing City Clerk,* 164 Mich.App. 150, 161, 416 N.W.2d 367, 372 (1987).

■ In its reply brief, Maccabees does not even suggest what clear legal obligations are owed by the defendants to the plaintiff. Indeed, since the main issue in this case is whether the policies and procedures outlined in the "Vendors Guide," a publication that has never been formally adopted by the State of Michigan, have granted the plaintiff a protected interest, it cannot be seriously contended that the rights and obligations of the parties are clearly established. Therefore, *mandamus* is not able to serve as a remedy in the present case since it cannot be used to determine the rights and obligations of litigants.

Based on the evidence before it, the Court concludes that it is highly likely that the plaintiff will ultimately prevail on its claim that the defendants deprived it of a protected interest without due process of law. As a result, the Court holds that the first requirement for a preliminary injunction has been met.

**618**

## B.

 The Court believes that the second requirement for a preliminary injunction, irreparable injury, has been met by the plaintiff as well. There is considerable authority for the proposition that when a plaintiff alleges deprivation of a constitutional right no further showing of irreparable injury is needed. *Gutierrez v. Municipal Court*, 838 F.2d 1031, 1045 (9th Cir. 1988); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir.1984). Since the possibility of a constitutional injury to the plaintiff has been established, this requirement has been fulfilled.

## C.

The Court also believes that no harm will befall third parties if a preliminary injunction is granted. The defendants are merely restrained from unconstitutional action. Moreover, the intervening defendant, Maccabees, and others who would want to compete in a new solicitation for this contract will simply be barred from taking advantage of any unconstitutional action on the part of the defendants.

Furthermore, the employees, retirees, and dependents of the State of Michigan will not be harmed by the issuance of an injunction against the state. Although the previous contract to provide insurance benefits expired on September 30, 1990, the parties have extended this contract until the end of October. Moreover, the plaintiff has indicated its willingness to continue providing the benefits until this matter is resolved.

## D.

The Court also believes that the public interest will be served by the issuance of a preliminary injunction. The public is obviously served by an injunction requiring state officials to conduct themselves in a constitutional manner. Moreover, an injunction will also serve the public interest by protecting the integrity of the competitive bidding process.

## IV.

 For the reasons stated above, the plaintiff's motion for a preliminary injunction is granted and the motions filed by the defendants and the intervening defendant are denied.