UNITED OF OMAHA LIFE INSURANCE
COMPANY, a Nebraska corporation,
Plaintiff–Appellee,

v.

Shelby P. SOLOMON, Director, Michigan
Department of Management and Bud-
get, William S. Warstler, Director, Of-
fice of Purchasing, Michigan Depart-
ment of Management and Budget, De-
fendants,

Royal Maccabees Life Insurance
Company, Intervening
Defendant–Appellant.

No. 91–1332.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 31, 1991.

Decided March 30, 1992.

Jeffrey V. Stuckey, Joseph A. Fink (briefed), Peter H. Ellsworth (argued), Dickinson, Wright, Moon, Van Dusen & Freeman, Lansing, Mich., for plaintiff-appellee.

Louis B. Reinwasser (argued and briefed), Clifford T. Flood, Lawrence D. Owen (briefed), Miller, Canfield, Paddock & Stone, Lansing, Mich., for intervening defendant-appellant.

Before: RYAN and BOGGS, Circuit Judges, and HOOD, District Judge.*

PER CURIAM.

This is an appeal from an order of the district court granting the plaintiff-appellee's motion for a preliminary injunction and denying the intervening defendant-appellant's motion for judgment on the pleadings. For the reasons which follow, we reverse the decision of the district court

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

and remand with directions to dismiss the complaint.

## I.

The pertinent facts are undisputed. The State of Michigan (State) has been offering life insurance to its employees for years. It is a self-insurer, assuming essentially all of the risk for payment of claims. It hires an insurance company to provide administrative services in connection with the payment of claims. For the past thirty years United of Omaha Life Insurance Company (United) has provided those administrative services. However, on March 15, 1990, the State put the contract for these services out for bid by issuing a Request for Quotation (RFQ). The RFQ required sealed bids to be submitted by 2:00 P.M. on April 27, 1990. It also advised that the State reserved the right to reject any and all bids if it was in its best interest to do so.

Only four insurance companies, including United and Royal Maccabees Life Insurance Company (Maccabees), submitted bids in response to the RFQ. However, only two of the bids were opened because it was determined that the other two—one of which was Maccabees'—did not meet the specifications established by the Michigan Department of Civil Service, the department required to administer the contract for the State. After these two bids were opened, it was determined that United had the lowest bid. Consequently, the State's Office of Purchasing, Department of Management and Budget, headed by William S. Warstler (Warstler) recommended that the contract be awarded to United.

Before the contract was awarded, Maccabees appealed from the State's refusal to open its bid, pointing out that it did meet the specifications and, alternatively, that the specifications were too stringent. After consulting with the Michigan Insurance Bureau, Warstler—who is not a party in this appeal—found, as Maccabees urged him to do, that the specifications as issued would preclude a significant number of very stable and capable insurance companies from competing. Warstler further determined that the specification should be rewritten and the contract rebid.

Prior to completion of the rebidding process, United obtained a temporary restraining order and a preliminary injunction which precluded the State from rebidding the contract. United argued that the State's failure to follow certain purchasing guidelines published in a booklet entitled "Doing Business with the State of Michigan—A Guide for Vendors" (Vendors Guide) [J.A., pp. 32–65] deprived it of property and/or liberty interests without procedural due process in violation of the Fifth and Fourteenth Amendments. Although not raised in its complaint or amended complaint, United also asked the district court in a brief to find that the State's actions amounted to a deprivation of its right to substantive due process under the Fourteenth Amendment. The district court held that the Vendors Guide provisions created a "protected" interest for United and that Warstler's actions deprived United of that interest without due process of law. *United of Omaha Life Ins. Co. v. Solomon,* 768 F.Supp. 613 (W.D.Mich.1990). Maccabees takes this appeal from the order granting the preliminary injunction and denying its motion for judgment on the pleadings.

## II.

■ To state a claim under 42 U.S.C. § 1983, the plaintiff must show two things: (1) that the defendant acted under color of state law, and (2) that the defendant deprived the plaintiff of a federal right, either statutory or constitutional. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Here, there is no doubt that Warstler was acting under color of state law. The question is whether Warstler deprived United of a federally-guaranteed right. *Bacon v. Patera,* 772 F.2d 259, 263 (6th Cir.1985).

## A.

■ The district court found that United had a protected liberty interest based on two provisions of the Vendors Guide. The first of these two provisions states:

To maintain fair and equal treatment of all bidders, the Office of Purchasing will not hear protests or grant appeals claiming inappropriate specifications in the RFQ/RFP unless the vendor raised the issue, in writing, at least seven days prior to the bid due date.

Vendors Guide, p. 22 [J.A., p. 45].

The second provision states:

In fairness to bidders who meet specification and to prevent delays in procurement, the Office of Purchasing will not withdraw a recommendation to award or re-evaluate bids when an appeal maintains that the RFQ/RFP specifications were unnecessarily restrictive or that a bid exceeding specifications provided a better value than a lower bid meeting specifications. A vendor must raise concerns about RFQ/RFP specifications as described in "Inappropriate Specifications" in this booklet.

Vendors Guide, p. 31 [J.A., p. 49].

A protected liberty interest goes beyond freedom from bodily restraint; it includes the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge and to enjoy generally those privileges long recognized as essential to the orderly pursuit of happiness by free men. *Board of Regents v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Although this definition of liberty interest has been somewhat narrowed by later Supreme Court cases, *see, e.g., Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), it is recognized that the due process clause forbids arbitrary deprivation of liberty " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him.' " *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)). Assuming for the moment that this case presents one of those limited circumstances where a corporation can claim a liberty interest, Warstler's actions neither precluded United from entering into other contracts with the State, nor besmirched United's good name. Hence, we find no deprivation of a protected liberty interest occurred.

**B.**

United also argues that the two quoted provisions from the Vendors Guide provided it with a property interest protected by the due process clause, an issue not fully addressed by the district court.[1] We do not agree with this contention as "[c]ourts generally agree that no property interest exists in a procedure itself, without more." *Curtis Ambulance of Florida, Inc. v. Board of County Comm'rs*, 811 F.2d 1371, 1377 (10th Cir.1987).

A "disappointed bidder" to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded. *Peterson Enter., Inc. v. Ohio Dep't of Mental Retardation and Developmental Disabilities*, 890 F.2d 416 (6th Cir.1989) (unpublished opinion). United failed to make either of these showings.

Michigan statutory and case law neither requires that the lowest bidder be awarded a state contract nor creates a property interest in disappointed bidders on state contracts. *Compare Pataula Electric Membership Corp. v. Whitworth*, 951 F.2d 1238 (11th Cir.1992) (Georgia case and statutory law mandating the award of a public contract to the "lowest responsible bidder" represents a rule or understanding sufficient to create a protected property interest). Moreover, it is indisputable that Warstler retained discretionary authority to reject any and all bids and to "accept" a bid only by signing a contract or a purchase

---

1. In fact, the district court described United's interest more generally as a "protected interest" and relied on case law in the area of protected liberty interest in explication of that conclusion. Nevertheless, we can consider United's contention. *Gaff v. F.D.I.C.*, 828 F.2d 1145, 1148 (6th Cir.1987).

order. Consequently, United could not show that the company had actually been awarded the contract nor that Michigan law or local rules limited the state's discretion as to whom to award the contract. While United is obviously disadvantaged by Warstler's decisions, and his actions clearly amount to a waiver of provisions in the Vendors Guide, United's interests lie in the process alone. United retained only a unilateral hope of being awarded the contract, not a right to it. Accordingly, we reject United's argument that it was denied a property interest protected by the due process clause.

### C.

 One further matter warrants discussion. United argues that the actions of Warstler amount to a substantive due process violation to which the teachings of *Parratt* do not apply. Again, we disagree.

The loss which United asserts is not fundamental. Moreover, it is a loss which can easily be remedied in the Michigan courts. Hence, we do not believe that the substantive due process clause applies in this instance. *See, e.g., Charles v. Baesler,* 910 F.2d 1349, 1356–57 (6th Cir.1990).

In any event, there are two types of substantive due process claims to which the *Parratt* rule does not apply:

> The first category encompasses claims based on a "right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment *simpliciter*." The second category ... includes allegations of official acts which "may not take place no matter what procedural protections accompany them."

*Hayes v. Vessey,* 777 F.2d 1149, 1152 (6th Cir.1985) (citations omitted). The test under the second category, the one United asserts applies here, asks whether the alleged conduct shocks the conscience of the court. *G.M. Engineers and Assoc. v. West Bloomfield Township,* 922 F.2d 328, 332 (6th Cir.1990); *Braley v. City of Pontiac,* 906 F.2d 220, 225 (6th Cir.1990); *McMaster v. Cabinet for Human Resources,* 824 F.2d 518, 522 (6th Cir.1987). The narrow question therefore is whether Warstler's conduct shocks the conscience. *Braley,* 906 F.2d at 226. We hold that Warstler's decision to waive the "seven day rule" does not constitute conduct that shocks the conscience.

### III.

 To obtain a preliminary injunction, a plaintiff must demonstrate, among other things, a strong or substantial likelihood or probability of success on the merits. *Mason County Medical Ass'n. v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977). Since we find the plaintiff's federal claims to be without merit, we believe the preliminary injunction was improvidently granted in this case.

Accordingly, the order of the district court granting a preliminary injunction is VACATED; the order of the district court denying Maccabees' motion for judgment on the pleadings is REVERSED; and this action is REMANDED with instructions to dismiss the complaint without prejudice to United's right to pursue its remedies in the Michigan courts.